# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-01914-SCT

*J & J TIMBER COMPANY, A MISSISSIPPI*
*CORPORATION*

*v.*

*REMBERT J. BROOME, SON AND NEXT*
*FRIEND OF JAMES C. BROOME, DECEASED,*
*AND REMBERT J. BROOME, FATHER AND*
*NEXT FRIEND OF SARAH M. BROOME, A*
*MINOR, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2004 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM W. McKINLEY, JR. |
| | DORRANCE AULTMAN |
| ATTORNEY FOR APPELLEE: | T. JACKSON LYONS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 05/04/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    This wrongful death suit arises out of an accident between a log truck and a bus. As

part of a settlement, the plaintiffs released the driver of the log truck from all liability and

agreed to indemnify him against third-party claims. The question presented is whether the

plaintiffs' settlement with the driver of the log truck precludes recovery against his employer

under a vicarious liability theory. While the Appellant raises two additional issues, the

disposition of this initial question renders the remaining two moot.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.    Jim Smith Trucking ("Smith"), a business engaged in hauling logs from timber vendors' yards to timber mills, hired Brent Galatas ("Galatas") to drive its hauling truck. Approximately three to four months before the accident at issue, Smith contracted with J&J Timber Company ("J&J Timber") to haul its logs. J&J Timber specified the species, type, length, cut, and amount of timber to be hauled to particular mills by Smith's driver, Galatas.

¶3.    On November 27, 1999, Galatas delivered two loads of J&J Timber's logs to its specified timber yard. After hauling and unloading the second load, Galatas was driving back to Smith's house in the unloaded truck when he collided with a bus occupied by a family of gospel singers on their way to perform a concert. The collision disintegrated the front of the bus, and two people, James C. Broome ("James") and Sarah M. Broome ("Sarah"), were killed.

¶4.    Prior to instituting litigation, the wrongful death beneficiaries of James and Sarah, including the Appellee Rembert J. Broome ("Broome"), reached a settlement with Galatas and Smith. The settlement included two documents entitled, "RECEIPT, RELEASE AND INDEMNITY AGREEMENT," representing the respective interests of James' and Sarah's beneficiaries. Both agreements contained similar language, quoted in relevant part below:

> The term "**RELEASED PARTIES**" as used in this RECEIPT, RELEASE AND INDEMNITY AGREEMENT, shall include the following: James "Jim" Smith, **Brent Galatas**, and American Reliable Insurance Company . . . .
>
> [The wrongful death beneficiaries] . . . do hereby **RELEASE, ACQUIT AND FOREVER DISCHARGE, all of the said RELEASED PARTIES,**

2

**collectively and individually, from any and all actions and/or causes of action** . . . [resulting] from injuries and/or damages we received . . . [in the incident] . . . .

[The wrongful death beneficiaries] . . . do understand that this Agreement effects a **RELEASE AND DISCHARGE of all our claims** . . . arising out of, or in any way related to the accident . . . .

Notwithstanding anything else contained herein to the contrary, it is agreed, understood, and stipulated that [the wrongful death beneficiaries] . . . are **specifically and expressly reserving, and not releasing, any and all claims we may have of any kind and type whatsoever relating to the incident against J&J Timber** . . . .

[The wrongful death beneficiaries] do warrant that we are the only parties entitled to claim and recover damages or otherwise make any recovery whatsoever resulting from or arising out of [the incident] and **we agree to defend, indemnify, and hold harmless the Releasees from any and all claims and damages, including third-party claims for damages resulting from or in any way arising out of the injuries, damages, and/or death of [the deceased persons] which may be made by any other person(s), party(s), entity(s), or concern(s), whatsoever**. . . .

(Emphasis added).

¶5.    On November 27, 2001, Broome filed a wrongful death action against J&J Timber, charging it with vicarious liability for the negligence of its employee, Galatas. At the conclusion of testimony, the issue submitted to the jury was whether J&J Timber could be held vicariously liable for Galatas' negligence in causing the crash. To reach that issue, the jury was first required to determine whether Galatas was J&J Timber's employee.

¶6.    The jury returned a unanimous verdict in favor of J&J Timber. However, the trial court granted Broome a new trial, stating it had misinstructed the jury and improperly restricted Broome by forcing him to abandon what the trial court concluded was a viable dual

3

employment theory of liability. On October 22, 2004, we granted interlocutory appeal and stayed further proceedings.

¶7.     Of the three issues presented by J&J Timber, we shall address only the first,[1] which we find dispositive of the case. The issue presented is whether, as a matter of law, the release of a tortfeasor also serves as a release of the tortfeasor's employer from claims of vicarious liability, despite an attempt by the releasor to preserve the right[2] to pursue such claims.

## DISCUSSION

¶8.     When reviewing issues of law, this Court engages in *de novo* review. **Sealy v. Goddard**, 910 So.2d 502, 506 (Miss. 2005) (citing **Ellis v. Anderson Tully Co.**, 727 So.2d 716, 718 (Miss. 1998)); **Ostrander v. State**, 803 So.2d 1172, 1174 (Miss. 2002) (citing **Dep't of Human Servs. v. Gaddis**, 730 So.2d 1116, 1117 (Miss. 1998)).

¶9.     J&J Timber argues that Broome's release of Galatas and agreement to indemnify him against all third-party claims effectively preclude Broome from pursuing an action against J&J Timber based on vicariously liability. J&J Timber further contends that when an injured

---

[1] The second issue certified for interlocutory appeal is whether the trial court erred in denying J&J Timber's peremptory instruction. The third issue certified for interlocutory appeal is whether the trial court erred in granting Broome's motion for a new trial.

[2] Because we conclude there can be no vicarious liability in this case, we need not reach the question of Galatas' employment status. Our analysis proceeds on the assumption *arguendo* that Galatas was J&J Timber's employee, even though J&J Timber has not conceded that point. Broome makes no claim that the company was independently negligent.

party releases the only negligent actor from liability, a derivative claim of liability against the employer is extinguished.

¶10.    J&J Timber asserts that, should Broome succeed in pursuing a claim of vicarious liability, a "circle of indemnity" will result.  J&J Timber points out that it has a common law right of indemnification against Galatas, who was the only actively negligent party.  Thus, Broome would seek reimbursement from Galatas of any judgement against it.  Galatas in turn would seek reimbursement from Broome pursuant to the indemnification agreement.  Thus, in effect, Broome would be ultimately responsible for the payment of any judgment, rendering moot Broome's suit against J&J Timber.  J&J Timber argues that such "circuity of action" can only be avoided by holding that the release of an employee bars all vicarious liability claims against the employer.

¶11.    Broome argues that Mississippi law permits a third party injured by an employee to elect to sue the employee, the employer, or both.  Accordingly, Broome says, the employee and employer are jointly liable for any damages to the injured party.  Broome contends that under Mississippi Code Annotated Section 85-5-1, a wrongful death beneficiary's settlement with one party does not operate to release any other party at fault.  Additionally, Broome points out that he released Galatas only in his individual capacity because the agreement expressly reserved the right to pursue a claim against J&J Timber as Galatas' employer. Broome contends the only way to harmonize the provisions of the release is to interpret them in a way that allows him to bring an action against J&J Timber.  Notably, Broome never

5

argues that we should uphold our previous determination of this issue from ***W.J. Runyon & Sons, Inc. v. Davis***, 605 So.2d 38 (Miss. 1992) (hereinafter ***Runyon***), *overruled on other grounds by* ***Richardson v. APAC-Mississippi, Inc.***, 631 So.2d 143 (Miss. 1994).

### ***Runyon*** and ***Richardson***

¶12.    Although ***Runyon*** holds that the release of an agent has no effect on the principal's vicarious liability, 605 So.2d at 43, J&J Timber points to a statement in *dicta* in ***Richardson*** indicating that the release of an employee bars claims of vicarious liability against the employer, 631 So.2d at 151 fn.7.  J&J Timber advocates the further overruling of ***Runyon*** and adoption of ***Richardson***'s *dicta* position on this issue.

¶13.    In ***Runyon***, the plaintiff, Davis, was injured when he collided with an asphalt truck obscured by the thick cloud of dust it created.  605 So.2d at 40-41.  One issue before the Court was whether Davis could sue the truck driver's putative employer, Runyon, even after Davis settled with the driver and released him.  ***Id.*** at 43.  Runyon argued that the settlement effected a full recovery by Davis, and allowing Davis to pursue a claim against it would lead to unjust enrichment.  ***Id.***  The Court noted that Davis had reserved his rights against the company in the release agreement, and we focused on the favorable public policy of encouraging settlements, stating "[t]here are all sorts of rational reasons why our law should allow a plaintiff to settle with less than all of multiple defendants and proceed against the remaining defendant or defendants."  ***Id.***  Finally, we found that because no language in the

6

release claimed that the settlement with the driver fully compensated him, Davis could proceed against Runyon. *Id.*

¶14. This Court also held that Runyon could be found independently negligent, not merely vicariously liable, for its actions leading to the crash. *Id.* at 42. While we held that the release of the driver did not preclude an action against Runyon, we blurred the distinction between maintaining an action against the employer on the basis of negligence directly attributable to the employer and negligence based solely on vicarious liability. This is the key inquiry in this case and the distinction discussed in *dicta* in *Richardson*.

¶15. Finally, the *Runyon* Court held that the employee/independent contractor analysis boils down to a single question: "whether the project owner maintains a significant *de jure* right or *de facto* power of control over the performance of aspects of the work from which the injury has arisen or to which it is reasonably incident." *Id.* at 46. Disposing of the traditional factor-based analysis, we held, as a matter of law, the driver was Runyon's employee, thus making Runyon vicariously liable for the driver's negligence. *Id.* at 47.

¶16. In *Richardson*, this Court took express exception to the last holding in *Runyon*. Because *Runyon* incorrectly analyzed the employment relationships involved, we overruled the case as to its independent contractor analysis. *Richardson*, 631 So.2d at 152. However, we did not expressly overrule *Runyon* as to its declaration, notably unsupported by any Mississippi authorities, that the release of an agent does not affect claims of vicarious

7

liability against the principal. In *dicta*, though, we indicated that this holding in ***Runyon*** was

suspect:

> While an employer and his employee are jointly and severally liable for injuries caused by the employee in the course of his employment, may be sued jointly or severally, and we have held that where both are sued, the jury may be instructed it can return a verdict against them both or either of them, **they are not joint tortfeasors**. **Joint tortfeasor claims arise where the separate wrongful conduct of two or more individuals combine to cause an injury, and each because of his conduct bears some responsibility for the injury**.
>
> There is a good reason to permit plaintiff to settle as to one of the joint tortfeasors, reserving the right to proceed against the other wrongdoer. **Where the principal is sought to be held liable for acts of his agent, as here, however, only one, the employee, has committed any wrong. Settlement with one and then proceeding against the other in this kind of case bears far greater scrutiny than settling with a joint tortfeasor and proceeding against the other**. We are not required to address this question in the case, however.

*Id.* at 151 fn. 7 (emphasis added; citation omitted).

¶17.    Prior to the ***Runyon*** decision, we held in ***Granquist v. Crystal Springs Lumber Co.***,

1 So.2d 216, 218 (Miss. 1941), that where a plaintiff recovered a judgment against the sole

tortfeasor, a subsequent suit against his employer was barred because the wrong was legally

satisfied.[3]  The Court stated:

> It further follows as a logical legal consequence of what has been said that when the third person, with the full knowledge alleged in the quoted plea, has by suit or action had a recovery against the agent or employee for the wrong committed by the agent or employee as the sole actor in the commission of the

---

[3] The ***Runyon*** Court cited ***Granquist*** only once, and that was for the proposition that the employer, Runyon, had a right of indemnity of and from its employee, the driver. ***Runyon***, 605 So.2d at 48. The ***Runyon*** Court never considered ***Granquist*** at any point during its discussion of how the release of the sole tortfeasor should affect claims of vicarious liability against the employer.

wrong, **the liability of the principal or master which was solely a derivative of, or a dependency from, and identical with the tort of the agent or servant, becomes merged into the judgment recovered against the agent or servant** if that judgment be collectible, for that the wrong has then been legally satisfied and **no subsequent or separate action against the principal or master will be allowed.**

*Id.* (Emphasis added). Of course, in *Granquist*, the plaintiff first sued the negligent employee, received a judgment, and then pursued an action against the employer based on vicarious liability. *Id.* at 218. In the instant case, Broome settled with the negligent employee and received compensation before filing suit, and then pursued an action against J&J Timber based on vicarious liability. Nonetheless, *Granquist*'s principles are applicable to the case at bar.

¶18. We reached a similar result in *Lowery v. Statewide Healthcare Services, Inc.*, 585 So.2d 778, 779 (Miss. 1991). In *Lowery*, this Court held that a statute of limitations bar against a nurse in a medical malpractice case also barred suit against the nurse's employer where the employer's "liability was predicated solely upon the doctrine of *respondeat superior*." *Id.* We noted the general rule "that a suit barred by a statute of limitation against an agent will likewise bar the same claim against the principal whose liability is based solely upon the principal and agent relationship, and not some act or conduct of the principal separate and apart from the act or conduct of the agent." *Id.* at 780.

¶19. An action against an employer based on the doctrine of *respondeat superior* is a derivative claim arising solely out of the negligent conduct of its employee within the scope of his or her employment. Loss of consortium is similarly derivative, and Mississippi law

9

dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own. *McCoy v. Colonial Banking Co., Inc.*, 572 So.2d 850, 852 (Miss. 1990). While Broome did not have his claims against Galatas thrown out, he voluntarily settled them and released Galatas from the threat of any further action. The principles precluding a loss of consortium claim when the underlying action is gone apply equally to this case with respect to an employer's vicarious liability. Once Broome discharged Galatas, the purely derivative vicarious liability claim against J&J Timber became barred.

¶20. Having settled with Galatas and released him from liability, and absent allegations of independent negligence on the part of J&J Timber, Broome may not maintain an action against the company. The Iowa Supreme Court has adeptly stated the reasoning behind this principle:

> The "percentage of negligence" attributable to the conduct of the servant constitutes the entire "single share" of liability attributable jointly to the master and servant . . . . Because this percentage of negligence represents the "single share" of liability covered by the common liability of the master and servant, the master is necessarily released from vicarious liability for the released servant's misconduct.

*Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 798 (Iowa 1994) (citing *Horjesi v. Anderson*, 353 N.W.2d 316, 318 (N.D. 1984)). The court stated that, "because vicarious liability derives solely from the principal's legal relation to the wrongdoer, settlement with the tortfeasor removes the basis for any additional recovery from the principal upon the same

acts of negligence." **Biddle**, 518 N.W.2d at 798 (citing **Copeland v. Humana of Ky., Inc.**, 769 S.W.2d 67, 70 (Ky. Ct. App. 1989)).

¶21.   Where a party's suit against an employer is based on *respondeat superior*, the vicarious liability claim itself is extinguished when the solely negligent employee is released. There can be no assessment of damages against the employer when no action can be brought against the only negligent party - the employee.  To the extent that **Runyon** holds that a vicarious liability claim can be maintained against the employer after the employee is released, without an allegation of independent negligence by the employer, that case is overruled.

**The "Circle of Indemnity"**

¶22.   We now address J&J Timber's "circle of indemnity" argument.  Should Broome succeed in his suit against J&J Timber, the company claims it would assert its common law right of indemnity against Galatas.  This common law right of indemnity would allow J&J Timber to recover all the damages it must pay to Broome as a result of the actions of Galatas, the only actively negligent party. *See* **Granquist**, 1 So.2d at 218.

¶23.   In turn, Galatas could rely on his contractual indemnity rights arising from the releases signed by Broome.  The releases state, in relevant part:

> [The wrongful death beneficiaries] agree to defend, indemnify, and hold harmless the Releasees [Galatas] from any and all claims and damages, including third-party claims for damages resulting from or in any way arising out of the injuries, damages, and/or death of [the deceased persons] which may be made by any other person(s), party(s), entity(s), or concern(s), whatsoever.

11

¶24. Following the circle of indemnity to its eventual conclusion, a hypothetical judgement of $1,000 would be collected by Broome from J&J Timber, who in turn would seek reimbursement of the $1,000 from Galatas, who would in turn seek reimbursement from Broome. In the final analysis, all three parties would be right back where they started. Stated differently, the "circle of indemnity" renders Broome's claims moot because he would, in affect, pay his own judgement. *See Dennis v. Southeastern Kansas Gas Co., Inc.*, 610 P.2d 627, 633 (Kan. 1980).

¶25. Contrary to this Court's assertion in *Runyon*, 605 So.2d at 43, eliminating the circuity of action that arises from an injured party's vicarious liability claim against an employer when the negligent employee has been released actually encourages settlement and promotes finality in actions. As the Supreme Court of South Dakota noted, "[t]he rationales of preventing circuity of action and encouragement of settlement complement one another. The complementary aspects of both rationales serve another important goal: finality. Public policy favors finality, thus avoiding circuity of action that is merely derivative and secondary." *Estate of Williams v. Vandeberg*, 620 N.W.2d 187, 190 (S.D. 2000). *See also Theophelis v. Lansing Gen. Hosp.*, 424 N.W.2d 478, 480 (Mich. 1988).

¶26. A majority of states have adopted the position that the release of a tortfeasor thereby releases the tortfeasor's principal for all claims of vicarious liability, despite any reservation of rights. *See, e.g.*, *Alvarez v. New Haven Register, Inc.*, 735 A.2d 306, 315 (Conn. 1999); *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 797 (Ill. 1993); 480; *Biddle*, 518 N.W.2d

at 799; ***Atkinson v. Wichita Clinic, P.A.***, 763 P.2d 1085, 1091-92 (Kan. 1988); ***Copeland***, 769 S.W.2d at 70; ***Kelly v. Avon Tape, Inc.***, 631 N.E.2d 1013, 1015 (Mass. 1994); ***Theophelis***, 424 N.W.2d at 480; ***Reedon of Faribault, Inc. v. Fidelity & Guar. Ins. Underwriters, Inc.***, 418 N.W.2d 488, 491 (Minn. 1988); ***Pioneer Animal Clinic v. Garry***, 436 N.W.2d 184, 188 (Neb. 1989); ***Horjesi***, 353 N.W.2d at 318; ***Mamalis v. Atlas Van Lines, Inc.***, 560 A.2d 1380, 1383 (Pa. 1989); ***Vandeberg***, 620 N.W.2d at 191. We adopt the position advocated by these courts that the injured party's release of an employee extinguishes all claims of vicarious liability against the employer, despite any reservation of rights.

**Mississippi Code Annotated Section 85-5-1**

¶27.    Broome contends that the right of an injured person to settle with and release one tortfeasor while reserving his right to proceed against others who may be legally responsible has been upheld in a long line of cases. While this may be a correct argument, it is inapposite here. Galatas and J&J Timber may be jointly liable, but they are ***not*** joint tortfeasors. *See* ***Granquist***, 1 So.2d at 218. "Joint tortfeasor claims arise where the ***separate*** wrongful conduct of two or more individuals ***combine*** to cause an injury, and each because of his conduct bears some responsibility for the injury." ***Richardson***, 631 So.2d at 151 fn. 7 (citing ***Granquist***, 1 So.2d at 218)(emphasis added). Here, Galatas is the sole tortfeasor. There is no apportionment of fault required in this case because the only person who committed any wrong was Galatas.

13

¶28. Broome points to Mississippi Code Annotated Section 85-5-1 as support for his position. The portion of the provision relied on by Broome states:

> In all cases of joint or joint and several indebtedness, the creditor may settle or compromise with and release any one or more of such debtors; and the settlement or release shall not affect the right or remedy of the creditor against the other debtors for the amount remaining due and unpaid, and shall not operate to release any of the others of the said debtors.

Miss. Code Ann. § 85-5-1 (1972). However, the statute addresses, and the cases cited by Broome involve, claimants settling with one *joint tortfeasor* and then pursuing a remedy against *another joint tortfeasor* who caused the wrong, not one tortfeasor and a vicariously liable employer as in this case. *See Country Club of Jackson v. Saucier*, 498 So.2d 337 (Miss. 1986) (release of driver did not release country club as country club and driver were independently liable tortfeasors - driver negligently operated car, country club served alcohol to visibly intoxicated host); *Smith v. Falke*, 474 So.2d 1044 (Miss. 1985) (release of one following driver did not release second following driver in rear-ender action - both drivers were independently liable for contributing to the accident); *Medley v. Webb*, 288 So.2d 846 (Miss. 1974) (plaintiff may sue two or more drivers who contributed to the accident, but plaintiff may only collect damages once); *Lee v. Wiley Buntin Adjuster, Inc.*, 204 So.2d 479 (Miss. 1967) (release of insurer did not release adjuster as insurer and adjuster were independently liable tortfeasors - insurer failed to pay claim, adjuster made misrepresentations). As such, Section 85-5-1 is inapposite.

14

**Reservation of Rights Against the Employer**

¶29. Broome also claims that the release executed in favor of Galatas only released Galatas in his individual capacity and not as the employee of J&J Timber. In accordance with our holding above, the release of a negligent employee, in any capacity, bars all claims of vicarious liability against the employer, despite a reservation of rights. Broome suggests that the public policy of encouraging settlements would be damaged if he could not sue J&J Timber after settling with and releasing Galatas. Broome cites a discussion of settlements and Section 85-5-1 from *McBride v. Chevron U.S.A.*, 673 So.2d 372, 379-80 (Miss. 1996), a case that has been statutorily overruled by Mississippi Code Annotated Section 85-5-7. In a case involving joint tortfeasors, this Court stated, "a defendant whose negligence has been found to have proximately caused injury to another person should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial." *McBride*, 673 So.2d at 380. However, this case involves neither joint tortfeasors nor the need for apportionment of fault. As such, the cases and statutes cited by Broome are irrelevant.

## CONCLUSION

¶30. We hold today that the release of a tortfeasor operates to bar claims predicated on vicarious liability against the tortfeasor's employer. To the extent *Runyon* holds otherwise, it is overruled. Our holding has no impact on the release of one tortfeasor when joint tortfeasors are involved, and it does not affect claims against an employer who was

15

independently negligent, rather than solely derivatively negligent.  Accordingly, we dismiss

Broome's vicarious liability claim against J&J Timber.

¶31.    **REVERSED AND RENDERED.**

      **SMITH, C.J., WALLER AND COBB, P.JJ. AND CARLSON, J., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**