# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-02016-SCT

*IN THE MATTER OF THE GUARDIANSHIP OF*
*AUSTIN LANE, A MINOR:*
*WILLIAM BUSH, M.D.*

*v.*

*BRANDY LANE, NATURAL PARENT AND*
*LEGAL GUARDIAN OF AUSTIN LANE, A MINOR*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2006 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN P. KRUGER |
| | AUBREY BRYAN SMITH |
| ATTORNEY FOR APPELLEE: | TINA LORRAINE NICHOLSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 11/20/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The issue presented in this medical negligence case is whether a chancellor abused his discretion by withdrawing approval of a settlement agreement which had been fully performed, solely because – contrary to everyone's understanding – the minor plaintiff was unable to pursue a claim against the settling defendant's putative employer who, subsequent to the settlement, was granted summary judgment by the circuit court.

## BACKGROUND FACTS AND PROCEEDINGS[1]

¶2.  Brandy Lane, twenty-nine weeks pregnant, was involved in a single-car accident in Ridgeland, Mississippi, on February 3, 2003.  Her obstetrician, Dr. William Bush, advised her to stay overnight at River Oaks Hospital for observation.  Dr. Bush saw her in his office at the clinic the next day after her discharge, and she appeared fine.

¶3.  On February 6, however, Lane returned to the clinic because she had started bleeding. Dr. Bush was not present, so she was examined by Dr. William Sutherland, who also pronounced that she was fine.  Later that day, Lane gave birth to her son, Austin, who was born with several severe brain injuries, including hydrocephalus, cerebral palsy, and blindness.

¶4.  Lane was appointed legal guardian for Austin by the Rankin County Chancery Court so she could initiate a personal-injury claim on her son's behalf.  Lane instituted a civil action in the Madison County Circuit Court against Dr. Bush, the City of Ridgeland, River Oaks Hospital, the OB-GYN Clinic of Jackson, PLLC, and Dr. Sutherland, alleging that Austin's injuries were the result of Dr. Bush's and Dr. Sutherland's failure to properly evaluate and treat Lane after the car accident.

¶5.  In August 2005, after learning that Dr. Bush's liability insurance would not provide coverage for the acts complained of in the lawsuit, Lane petitioned the chancellor to grant her authority to settle Austin's claims with him for $10,500, "in full and final settlement of any and all liability of himself" now or in the future.  The settlement agreement was

---

[1]These facts are largely taken from the Court of Appeals' decision in *In Re Lane*, 2008 Miss. App. LEXIS 118 (Miss. Ct. App. Feb. 26, 2008).

conditioned upon its approval by the chancery court. The agreement also stated that Austin retained the right to prosecute any claims "against the other named defendants including, but not limited to, claims against the other defendants for their vicarious liability" for Dr. Bush's conduct. However, the agreement did not mention the clinic, specifically, in this regard.

¶6.    At the settlement hearing, the chancellor inquired as to the liability of the remaining defendants. Lane's counsel represented to the chancellor that she understood the clinic could still be held vicariously liable for Dr. Bush's conduct. Counsel for Dr. Bush did not contradict this understanding. Finding the settlement was in the best interest of Austin, the chancellor approved the settlement agreement by decree dated August 15, 2005.

¶7.    In November 2005, the Madison County Circuit Court granted the clinic summary judgment[2] on the claim that it was vicariously liable for Dr. Bush's conduct. The parties do not completely agree on the trial court's reason for granting summary judgment,[3] and the record provides neither the trial court's reasoning for its order, nor other relevant pleadings from the circuit court action.

¶8.    Dr. Bush claims the circuit court granted the clinic's motion because the settlement agreement's language indemnifying Dr. Bush created an improper "circle of indemnity"[4]

---

[2]The clinic was not released from vicarious liability for the alleged negligence of Dr. Sutherland.

[3]As discussed later in this opinion, this Court's opinion in *J&J Timber Co. v. Broome*, 932 So. 2d 1 (Miss. 2006), had not yet been handed down, and thus was not a factor in the summary judgment.

[4]As the Court of Appeals noted: "The 'circular indemnity' or 'circuity of action' doctrine is 'when as a result of indemnification obligations or settlement agreements between the parties, a plaintiff would end up indemnifying another party for its own claim.' *Toyota Motor Sales, Inc. v. Farr*, 320 F. Supp. 2d 496, 498 (S.D. Miss. 2003) (quoting *El Paso*

3

among the clinic, Lane, and Dr. Bush. Lane – while acknowledging the circuit court interpreted the settlement agreement as releasing Austin's vicarious liability claim against the clinic under circular indemnity – claims the circuit judge found the settlement agreement insufficient to preserve Austin's claim for vicarious liability against the clinic for Dr. Bush's alleged negligence.

¶9.     In February 2006, Lane filed a motion asking the chancellor to amend his August 15, 2005, decree to more specifically state that the vicarious liability claims against the clinic for Dr. Bush's conduct were preserved. The record does not disclose how the chancellor could have preserved such claims, since summary judgment had already been granted to the clinic by the circuit court three months earlier. Nevertheless, at the hearing on this matter, the chancellor stated that the settlement "released Dr. Bush individually and only him."

¶10.    On March 20, 2006, the chancellor entered an amended decree in which he stated:

> The Court finds that it has jurisdiction of the parties and the subject matter and, having heard evidence and being fully apprised of the premises, finds that it was the intent of William G. Bush, M.D. and Brandy Lane to release the Minor's disputed claims against William G. Bush, M.D. and only William G. Bush, M.D., and that it was the intent of Brandy Lane to preserve the Minor's

*Refinery, LP v. TRMI Holdings, Inc.,* 302 F.3d 343, 349-50 (5th Cir. 2002)); *Crowson v. Bridges*, 227 Miss. 73, 75, 85 So. 2d 810, 811 (1956). The doctrine would operate in [this] case as follows: since the clinic would be entitled to indemnity from Dr. Bush if it was held liable for Dr. Bush's actions, it could recover any money the clinic paid to the plaintiff from Dr. Bush, who could then, because of the clause in his settlement agreement allowing for "indemnity," recover what he paid the clinic from the plaintiff. The plaintiff thus would end up paying her own judgment, thereby creating the 'circle of indemnity.' Therefore, if a settlement agreement does not specifically state that it is preserving a claim against another defendant for vicarious liability for the tortfeasor, the result is that the agreement may extinguish claims against the remaining defendant as a matter of law."

4

claims against the OB-GYN Clinic, PLLC for its vicarious liability for Dr. Bush's alleged negligence.

The amended decree also included the following relevant provisions:

2) Following its investigation, this Court is satisfied that the proposed offer of settlement is a fair and reasonable offer and that it is in the best interest and welfare of said Minor that the settlement be made, therefore a decree is hereby granted accordingly, approving and authorizing such settlement;

3) Petitioner is hereby authorized to receive and accept payment of the settlement in the sum of $10,500 directly to Nicholson Law Firm, PLLC, for said Minor's expenses in the ongoing litigation against the remaining defendants;

4) The Court hereby approves the proposed Release and Indemnity Agreement attached to the Petition as Exhibit "B" and upon payment and/or tender of said settlement funds to Nicholson Law Firm, PLLC, for and on behalf of said Minor's expenses in the ongoing litigation against the remaining defendants, that Brandy Lane, for and on behalf of said Minor, is hereby authorized, empowered and directed to execute in favor of William G. Bush, M.D. a complete and binding Release of all claims against him and only him based upon injuries and damages sustained by or through Austin Lane, a Minor, on account of the above described incident in the form of the document attached to the Petition as Exhibit "B";

6) Petitioner is hereby authorized, empowered and directed to dismiss with prejudice, forthwith, the cause of action currently pending in the Circuit Court of Madison County, Mississippi styled "Brandy Lane, Individually and on Behalf of Austin Lane, a Minor vs. City of Ridgeland, River Oaks Hospital, Inc., OB-GYN Clinic of Jackson, PLLC, William G. Bush, M.D. and William K. Sutherland, M.D." and bearing civil action number "2004-0011R" only as to William G. Bush, M.D.; and

7) Until further order of this Court, Petitioner is neither authorized nor empowered to dismiss the Minor's pending claims against the OB-GYN Clinic, PLLC for vicarious liability for Dr. Bush's alleged negligence, nor to enter into any Release or Agreement which purports to or does release those claims.

8) Upon compliance with the terms of this Decree, William G. Bush, M.D. is hereby fully acquitted and forever and finally discharged from any and all liability on account of the above described accident.

5

¶11.   In his amended decree, the chancellor did not condition his approval of the settlement on a reversal by the circuit court or an appellate court of the summary judgment which had been granted to the clinic.  In fact, the amended decree made no mention of the summary judgment.

¶12.   Upon obtaining the amended decree, Lane filed a motion in the Madison County Circuit Court, requesting that Austin's vicarious liability claims be reinstated against the clinic.  The record does not disclose whether the motion was ever addressed by the circuit court.[5]

¶13.   In May 2006, this Court handed down *J&J Timber Co. v. Broome*, 932 So. 2d 1 (Miss. 2006), which – clarifying several previous opinions – held that a vicarious liability claim against an employer may not be pursued where the employee has been released.[6]  Lane returned to chancery court and filed a motion to set aside the settlement with Dr. Bush, arguing that this Court's decision in *J&J Timber* had made performance of the settlement agreement impossible.  Specifically, Lane argued:

> Under [*J & J Timber*, the chancery] Court's March 20, 2006 Amended decree is now a contradiction in terms. While the Amended Decree authorizes Brandy Lane to release the Minor's claims against the tortfeasor, Dr. Bush, it specifically prohibits her from releasing the claims of vicarious liability against his employer, the Ob-Gyn Clinic. This state of affairs cannot exist under the new rule set out in J&J Timber. This Court must either affirm the existing settlement agreement with Dr. Bush and acknowledge that the Minor's

---

[5]However, before the circuit court ruled on the motion, this Court handed down *J&J Timber Co. v. Broome*, 932 So. 2d 1 (Miss. 2006), which disallowed maintaining a vicarious liability claim against an employer if the employee has been released.

[6]*See* **Granquist v. Crystal Springs Lumber Co**., 190 Miss. 572, 1 So. 2d 216, 218 (1941); **Richardson v. APAC-Mississippi, Inc**, 631 So. 2d 143 (Miss. 1994); and **W.J. Runyon & Son, Inc. v. Davis**, 605 So. 2d 38 (Miss. 1992).

6

claims against the Ob-Gyn Clinic for vicarious liability are extinguished as a matter of law, or the Court must set aside the Minor's settlement agreement with Dr. Bush and allow the Minor to proceed in Circuit Court on his claims against both Dr. Bush and the Clinic.

¶14. We find these representations to the chancellor incorrect, as a matter of law. The clinic was granted summary judgment by the circuit court prior to our decision in *J & J Timber*. Thus, the "new rule" referred to by Lane had no effect on her claim against the clinic. Furthermore, Lane's argument to the chancellor that setting aside the settlement with Dr. Bush would somehow allow her to pursue a claim against the clinic was both illogical and unsupported by the record. The clinic had already been granted summary judgment by a circuit court judge, whose orders are not appealable to the chancery court.

¶15. Nevertheless, on November 2, 2006, the chancellor set aside the settlement agreement, finding persuasive Lane's assertion of the contractual doctrine of impossibility of performance. The chancellor ordered Lane to return the $10,500 settlement to Dr. Bush, and to re-institute the suit in the circuit court against Dr. Bush on her son's behalf.

¶16. Dr. Bush appealed, and we referred the matter to the Court of Appeals, which affirmed the chancellor's decision. *In Re Lane*, 2008 Miss. App. LEXIS 118, at *19. After the Court of Appeals denied Dr. Bush's motion for rehearing on June 17, 2008, he filed a petition with this Court for certiorari review, which we granted.

## DISCUSSION

¶17. The essential facts are not in dispute. We must address a question of law, that is, whether the doctrine of impossibility of performance of a contract, when applied to the facts of this case, may serve as a basis for setting aside both the settlement agreement and the

7

chancery court approval of the settlement. We review de novo a chancellor's application of the law. *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 519 (Miss. 2005).

¶18. Dr. Bush makes three basic arguments on appeal: (1) his settlement with Lane had already been fully performed, precluding application of the doctrine of impossibility of performance; (2) Lane has wholly failed to satisfy the requirements of Mississippi Rule of Civil Procedure 60 regarding setting aside prior judgments; and (3) voiding fully performed, court-approved settlements will erode the public's confidence in the judicial system. Because we find the first issue dispositive, we decline to address the other two.

¶19. The crux of Lane's argument to the chancery court – and the one that the chancery court accepted – was that this Court's decision in *J&J Timber Co. v. Broome*, 932 So. 2d 1 (Miss. 2006), rendered performance of the settlement agreement with Dr. Bush "impossible." Lane argues that both she and Dr. Bush "intended" that her claims against the clinic would survive, and that *J&J Timber* made that impossible by holding that the release of an employee releases the employer's vicarious liability for that employee's actions. For two reasons, we cannot agree.

### The *J & J Timber* argument.

¶20. First, we find no explanation in the record of how this Court's ruling in *J & J Timber* should have any bearing on this case. The undisputed facts are that, when the chancellor entered his amended decree approving the settlement agreement, summary judgment had already been granted to the clinic, and *J & J Timber* had not been handed down. Thus, it was not *J & J Timber*, but rather the summary judgment granted to the clinic by the circuit court, which prevented Lane from pursuing a claim against the clinic. Stated another way,

8

even if this Court had not handed down *J & J Timber*, Lane could not have pursued a claim against the clinic for the alleged negligence of Dr. Bush because the circuit court had granted summary judgment to the clinic for reasons other than *J & J Timber*, and the summary judgment was not appealed.

*The "impossibility of performance" argument.*

¶21. The doctrine of impossibility of performance of a contract was adopted by this Court as early as 1919:

> [W]hen a party by his own contract creates a duty or charge upon himself he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible; the answer to the objection of hardship in all such cases being that it might have been guarded against by a proper stipulation . . . . There are, however, certain classes of events the occurring of which are said to excuse from performance because "they are not within the contract," for the reason that it cannot reasonably be supposed that either party would have so intended had they contemplated their occurrence when the contract was entered into, so that the promisor cannot be said to have accepted specifically nor promised unconditionally in respect to them. These three classes are: First, a subsequent change in the law, whereby performance becomes unlawful. Second, the destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract. And, third, the death or incapacitating illness of the promisor in a contract which has for its object the rendering by him of personal services.

*Piaggio v. Somerville*, 80 So. 342, 344 (Miss. 1919) (internal citations omitted).

¶22. As to the first class, Lane's argument fails because *J & J Timber* was not a "subsequent change in the law, whereby performance [became] unlawful." As stated above, *J & J Timber* could have had no bearing on this case because it was handed down after the circuit court had granted summary judgment to the clinic on other grounds.

9

¶23. The second class under *Piaggio* is "the destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract." *Piaggio* at 344. The case before us today does not fall within this class.

¶24. Under the terms of the settlement agreement, the only thing essential to Dr. Bush's performance was his payment of $10,500. Lane was not required to pursue a claim against the clinic, and Lane's ability to pursue the claim was not made a condition subsequent within the agreement. *J & J Timber* affected no part of the "performance" required under the settlement. In fact, performance under the settlement agreement was already complete when *J & J Timber* was handed down.

¶25. The amended decree did clearly set forth that the settlement with Dr. Bush was not to be construed as a settlement with the clinic. Neither party claims that the chancellor's approval of the settlement with Dr. Bush released the clinic. The clinic was released from liability – not by the settlement with Dr. Bush – but by the circuit court's unappealed grant of summary judgment which had *already taken place* when the amended decree was applied for and entered.

¶26. Furthermore, it cannot be rationally argued that the settlement agreement and amended decree were conditioned upon the circuit court setting aside its summary judgment, since the summary judgment was not mentioned in either document. This Court has held:

> [I]f a contingency may be guarded against by the parties in the contract, i.e., it is foreseeable or within the control of one of the parties, its occurrence will not discharge the parties' obligations under the contract. As the Court explained, "where a party, by his own contract, engages to do an act, it is deemed to be his own folly, that he did not thereby expressly provide against contingencies, and exempt himself from liability in certain events . . . .

10

***Starkville v. 4-County Elec. Power Ass'n***, 819 So. 2d 1216, 1223 (Miss. 2002) (citing

***Hendrick v. Green***, 618 So. 2d 76 (Miss. 1993)).

¶27.    In negotiating the settlement with Dr. Bush, Lane was certainly free to demand the inclusion of a condition subsequent, that is, a provision in the settlement agreement that the validity of the settlement was conditioned upon her ability to successfully pursue a claim against the clinic.  But no such condition was included in the settlement or decree, and Lane neither raised nor briefed the issue of condition subsequent.

¶28.    The performance language of the settlement agreement states:

> [F]or and in consideration of the total sum of ten thousand, five hundred dollars, paid to the Nicholson Law Firm . . . .the undersigned Brandy Lane, as Natural Mother and Legal Guardian of Austin Lane, a Minor, have for said Minor and do by these presents in the capacity as Natural Mother and Legal Guardian of said Minor, *hereby release and forever discharge William G. Bush, M.D. . . . from any and all claims, demands, damages, actions, and causes of action, of every kind and nature . . . .*

(Emphasis added).  It is clear from this unambiguous language that, upon Dr. Bush's payment of the money, no performance remained under the settlement agreement.

¶29.    The final class listed in ***Piaggio*** – "the death or incapacitating illness of the promisor in a contract which has for its object the rendering by him of personal services" – is clearly not applicable here.  ***Piaggio*** at 344.

¶30.    Thus, because the performance required under the settlement was not made "impossible" by ***J&J Timber***, Lane's claim of impossibility of performance is without merit.

## CONCLUSION

¶31.    At the time the original settlement was approved by the chancellor, Lane was pursuing a claim against the clinic.  The chancellor's later setting aside of that settlement because Lane

11

had been unsuccessful in pursuing her claim against the clinic, was tantamount to guaranteeing Lane she would be successful against the clinic. The institution of such a rule would place every settlement in doubt. For this reason, and for the reasons stated above, we find that the chancellor erred as a matter of law in setting aside the settlement because performance of the settlement agreement was "impossible." Accordingly, the decision of the Rankin County Chancery Court is reversed and remanded for disposition consistent with this opinion.

¶32.    **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER, P.J., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J. AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION**.