# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01249-SCT

*HARTFORD UNDERWRITERS INSURANCE COMPANY*

*v.*

*SHIRLEY B. WILLIAMS*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/09/2004 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JUSTIN L. MATHENY |
| | JOHN P. SNEED |
| | NEIL LLOYD |
| | ERIKA L. CSICSILA |
| | MARCI A. EISENSTEIN |
| | CATHERINE M. MASTERS |
| ATTORNEYS FOR APPELLEE: | R. BRITTAIN VIRDEN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND REMANDED; ON CROSS-APPEAL: AFFIRMED - 04/20/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This case comes before us on appeal from a jury verdict of $150,000 in compensatory damages and $1.5 million in punitive damages rendered in favor of Shirley B. Williams and against her auto insurance carrier, Hartford Underwriters Insurance Company.  A final judgment was entered by the Circuit Court of Washington County on May 13, 2004;

however, the trial court subsequently vacated this judgment and re-entered judgment on June 9, 2004, due to a grant of Hartford's Miss. R. Civ. P. 60(b) motion for relief from judgment. Because the order to vacate allowed Hartford's otherwise untimely filed motions for a judgment notwithstanding the verdict, for a new trial and for remittitur to be considered as timely filed and thus appropriately considered on their merits, Williams filed a motion requesting the circuit court to reconsider, and thus requested the court to strike Hartford's three post-trial motions due to untimely filing. Ultimately, Judge W. Ashley Hines (1) denied Williams's motions to reconsider and to strike; and, (2) denied Hartford's post-trial motions for JNOV, new trial and remittitur. Aggrieved by these orders, Hartford has appealed, and Williams has cross-appealed. We reverse and remand as to Hartford's appeal, and affirm as to Williams's cross-appeal.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.    The facts of this bad faith insurance case stem from an accident which occurred on the night of June 13, 2001, when Shirley Williams's truck collided with Kenneth Amos's tractor. Williams was traveling northbound on Tate Road, a rural road located in Washington County in her Ford Ranger pick-up truck, as Amos was exiting a field in his tractor and preparing to travel southbound on Tate Road. The testimony of Amos and Williams varies as to the following events, except that it is clear that the accident happened in close proximity

2

to a narrow bridge as night was falling.[1]  Thus, Williams had her headlights on, and Amos had his tractor's lights fully illuminated.[2]

¶3.    Amos's testimony at trial revealed that after disking a field, Amos turned onto Tate Road and stopped his tractor just shy of the bridge in order to shift his tractor into road gear.[3] Amos claimed that his tractor was parked as far over to his southbound side of the road as it could be with his front wheels just inside the center line of the road and with the disk he was hauling just over the center line. According to Amos, he first saw Williams coming down Tate Road traveling at an estimated forty to forty-five miles per hour. Amos maintained that as Williams entered the bridge, she locked her brakes and skidded into the front of Amos's tractor.  Amos stated that the left front part of Williams's truck hit the left front bracket of a chemical tank located on the front of his tractor.  Amos also testified that based on the manner of contact of Williams's truck and his tractor, Williams would have had to have been in his lane of travel.  Amos refuted testimony presented by Williams that she hit the disk he was towing, and Amos opined that Williams would have had to have been past his tractor or driven through his rear wheel in order to hit the disk.

_____

[1]The bridge was between 16 and 20 feet wide, depending on where the measurement was taken.  Importantly, there were no guard rails on the bridge.  Amos testified that "two cars don't cross that bridge at the same time."

[2]Amos's tractor had two floodlights on the back, and four halogen lights on the front.  Amos claims his tractor was "lit up like a stadium."

[3]Road gear is the tractor's highest gear, which allows the tractor to travel at a speed of twenty-three miles per hour.

¶4. Williams painted a different description of the scene at the bridge on Tate Road. Williams testified that as she was crossing the bridge a "blue" vehicle, which Amos never acknowledged existed, traveling south, moved into her northbound lane in order to pass Amos's tractor and then darted back into the southbound lane just in time to get by her. Williams asserted that she was blinded by the bright lights of this unknown vehicle and thus, could not see that Amos had moved into her northbound lane of traffic.[4] In direct contrast to Amos's testimony, Williams testified that the collision was between the front left portion of her truck and the disk that was attached to Amos's tractor, and that she was traveling at a speed of twenty-five or thirty miles per hour.[5] According to Williams, the accident happened in a split second, and when she saw Amos's tractor in her lane she applied her brakes, slowed her vehicle, but still skidded into Amos's tractor.

¶5. Officer Kevin McCoy responded to the accident and arrived on the scene at 9:34 p.m. Upon arrival, Officer McCoy interviewed Amos and Williams, and completed an accident report. However, Officer McCoy did not determine fault; he issued no citations; and, he reported only the divergent views of the accident participants. Of note, the accident report contained a diagram of the post-accident scene which roughly portrayed a head-on collision with Amos's tractor impeding on Williams's lane of travel. Despite this diagram, Officer

---

[4]On cross-examination, Williams admitted that she did not tell Ms. Libretti (the Hartford Insurance casualty adjuster that handled Williams's claim) that Amos's tractor was in the southbound lane of traffic when she first saw it.

[5]However, on cross-examination Williams admitted to telling a nurse at the hospital that she was driving forty-five miles per hour.

4

McCoy did not mark the "drove on the wrong side of the road" code provided on the accident report. Interestingly, the accident report did not reveal that either party was blinded by headlights.

¶6. The collision crumpled the front left fender of Williams's vehicle; however, no injuries were recorded, and no emergency vehicles were called. Amos testified that as Williams emerged from her vehicle, she did not complain of injuries, but instead, she expressed gratitude that the accident was not any worse than it was. However, Williams was subsequently taken to the Delta Regional Medical Center by her cousin and her daughter's boyfriend, and she was treated at the Medical Center for soreness in her neck, shoulder, back and legs. Williams later received therapy at the Metro Physical Clinic for persistent pain associated with the accident. Her medical bills totaled $8,779.71.

¶7. Following the accident, Williams filed multiple claims with Hartford for medical expenses, collision damage to her truck, rental car expenses, and ultimately, uninsured motorist (UM) coverage because Amos had no liability insurance coverage on his tractor. Hartford asserted that it immediately began adjusting Williams's claims and cited the $5,000 maximum medical payment it made to Williams, the total loss value paid to her for the value of her truck, and the $439.32 of the $600.00 maximum it paid to her for rental car expenses.[6] Hartford maintained that on November 6, 2001, Williams informed Hartford of Amos's alleged role in the accident, and the existence of the accident report. Further, Hartford made

---

[6]Williams's testimony reveals that the she owed more money on her truck than it was worth, and that there was a lien of approximately $3,000 on the truck, which lien Hartford paid off.

note of a default judgment Williams received against Amos, and asserted that in contravention of her insurance policy, Williams improperly withheld information from Hartford concerning her lawsuit against Amos and his lack of insurance coverage.

¶8. On April 30, 2002, Hartford denied Williams's UM claim. On May 14, 2002, Williams submitted to Hartford evidence of the default judgment rendered against Amos and urged Hartford to reconsider its decision to deny her claim. Shortly thereafter, Hartford again denied Williams's UM claim. On June 27, 2002, Williams filed her suit against Hartford.

¶9. At trial, Williams asserted two claims. First, she alleged Hartford breached its contract with her regarding her uninsured motorist coverage and, second, that her uninsured motorist claim was denied in bad faith. Williams sought $104,198 in compensatory damages, and $1,000,000 in punitive damages. Before submitting the case to the jury for consideration, the trial judge made a determination that, as a matter of law, there was a disputed question of fact concerning the issue of punitive damages. The jury ultimately returned a verdict in Williams's favor, awarding her both compensatory damages in the amount of $150,000, and punitive damages in the amount of $1.5 million.

¶10. On May 13, 2004, the trial judge entered final judgment consistent with the jury verdict in favor of Williams. On May 28, 2004, Hartford, who missed its deadline to file post-trial motions, filed a Rule 60(b) motion to have the final judgment vacated due to exceptional circumstances. *See* Miss. R. Civ. P. 60(b). On June 13, 2004, Hartford's motion was granted, and Hartford subsequently filed its post-trial motions, which were denied on

6

their merits on October 5, 2004. On October 8, 2004, Hartford appealed the three orders of the circuit court by filing a notice of appeal which was supplemental to the "protective" notice of appeal filed on June 11, 2004. Seven days later, Williams filed a cross-appeal concerning the circuit court's decision to vacate its original judgment and to deny her motion to reconsider that decision. We now address the issues raised in the respective appeals.

## DISCUSSION

¶11. A trial judge's decision to grant relief under Rule 60(b) is subject to review under an abuse of discretion standard. *M.A.S. v. Mississippi Dept. of Human Services*, 842 So.2d 527, 530 (Miss. 2003) (citing *Telephone Man, Inc. v. Hinds County*, 791 So.2d 208, 210 (Miss. 2001); *Moore v. Jacobs*, 752 So.2d 1013, 1015 (Miss. 1999)). Thus, we must defer to the trial judge's discretion, but note that consideration of a Rule 60(b) motion requires that an important balance be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality. *Lose v. Illinois Cent. Gulf R.R.*, 584 So.2d 1284, 1286 (Miss. 1991) (quoting *Stringfellow v. Stringfellow,* 451 So.2d 219, 221 (Miss. 1984)).

¶12. We will reverse a trial judge's denial of a motion for a new trial only when such denial amounts to an abuse of that judge's discretion. *Whitten v. Cox*, 799 So.2d 1, 7 (Miss. 2000); *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 960-61 (Miss. 1999) (citations omitted). These standards of review, however, are predicated on the presumption that the trial judge applied the law correctly. *Id*.

**I.     WHETHER THE TRIAL COURT ERRED IN GRANTING HARTFORD'S MOTION TO VACATE THE FINAL JUDGMENT AND IN SUBSEQUENTLY RE-ENTERING JUDGMENT DUE TO EXCEPTIONAL CIRCUMSTANCES.**

¶13.    A threshold issue that must be determined in today's appeal is whether Hartford's post-trial motions for judgment notwithstanding the verdict, for new trial and for remittitur were timely filed.  In order to make this determination, we examine the circuit court's decision to grant Hartford's motion to vacate judgment due to exceptional circumstances pursuant to Miss. R. Civ. P. 60(b).  This issue is pivotal, because in ruling to vacate the May 13, 2004, judgment and to re-enter judgment on June 10, 2004, the trial judge afforded Hartford the opportunity to file its post-trial motions pursuant to the provisions of Rules 50 and 59.

¶14.    Miss. R. Civ. P. 60(b), which provides the grounds for which a judgment or order may be set aside, reads in pertinent part:

> (b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (2) accident or mistake;
> *******
> (6) any other reason justifying relief from the judgment.

Miss. R. Civ. P. 60(b) (emphasis supplied).  "Relief under Rule 60(b)(6) 'is reserved for exceptional and compelling circumstances.'" *Sartain v. White*, 588 So.2d 204, 212 (Miss. 1991).  *See also* *State v. One (1) Chevrolet Nova Auto.*, 573 So.2d 787, 790 (Miss. 1990). Because Miss. R. Civ. P. 60(b)(6) is based directly on its federal counterpart, it is helpful to

8

reflect on federal jurisprudence.  In ***Smith v. Jackson Tool & Die, Inc.***, 426 F.2d 5 (5th Cir. 1970), the Fifth Circuit stated:

> The policy of finality of judicial proceedings is, and indeed it should be, a strong one, but in the face of unusual factors, equitable principles encompassed within Rule 60(b) justify further inquiry. Rule 60(b)(6) provides that the trial court may grant relief for 'any other reason justifying relief from the operation of the judgment.' It has been said that this rule's purpose is to make available those grounds which equity has long recognized as a basis for relief. ***Bros Incorporated v. W. E. Grace Manufacturing Co.***, 320 F.2d 594 (5th Cir. 1963). In ruling on a motion to vacate, equitable considerations including lack of prejudice to defendant and prejudice to plaintiff must be given consideration. And often, the interest of ruling on a motion on the merits outweighs the interest in orderly procedure and in the finality of judgments.

***Jackson Tool & Die***, at 8.

¶15.    Coordinate to the Fifth Circuit, this Court has stated that Rule 60(b)(6) "is designed for cases of extreme hardship not covered under any of the other subsections."  ***Burkett v. Burkett***, 537 So.2d 443, 445 (Miss. 1989).  *See, e.g., **United States v. Karahalias***, 205 F.2d 331 (2d Cir. 1953).  Moreover, this Court has referred to this catch-all provision as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief." ***Burkett***, 537 So.2d at 445 (citing ***Bryant, Inc. v. Walters***, 493 So.2d 933, 939 (Miss. 1986)).  *See also **Accredited Surety and Casualty Company, Inc. v. Bolles***, 535 So.2d 56, 60 (Miss. 1988).  Simply stated, Rule 60(b) provides a trial judge the discretionary capacity to right the unforeseeable wrong without having to undermine important procedural mandates.  While Rule 60(b) should only be activated with a scrupulous regard for the aims

of finality, when exceptional circumstances are deemed to exist, trial courts retain the discretionary authority to vacate judgments whenever that action is appropriate to accomplish justice. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2864 p.350.

¶16. In today's case, Hartford failed to file its post-trial motions for JNOV, new trial and remittitur within the ten-day limitations period following the entry of final judgment. Under Rules 50 and 59, a party must file post-trial motions not later than ten days after judgment. Importantly, the evidence before the circuit court indicates that Hartford did not receive notice of judgment until May 28, 2004. Even more important is evidence that Hartford made several inquiries to the circuit clerk before and after the entry of judgment and was informed each time that no judgment had been entered.

¶17. In *Jones v. Estelle*, 693 F.2d 547 (5th Cir. 1982), the Fifth Circuit took note of the importance of an attorney's diligent inquiry when deciding to grant or deny a Fed. R. Civ. P. 60(b) motion. In dismissing the appeal for want of jurisdiction, the Fifth Circuit stated:

> As we discuss in *Fidelity & Dep. Co. v. Usaform Hail Pool, Inc.*, 523 F.2d 744, 749 (5th Cir. 1975), underlying the rule is the implicit burden on the party and counsel to make "periodic inquiries" into the course of the proceedings. This burden clearly is applicable here. The magistrate's recommendation was filed in late August 1980. Objection was filed by counsel on September 4. Almost 14 months later, petitioner himself made inquiry and filed appeal.
>
> There are no unique circumstances here such as would demand vacation and reentry of judgment under Fed.R.Civ.P. 60(b). Nor are there circumstances such as were present in *Curry v. Wainwright,* 416 F.2d 379 (5th Cir. 1969), where the *pro se* petitioner did not learn of entry of judgment until he inquired to the court by letter. In *Curry* the petitioner acted with reasonable diligence, inquiring into the matter within 2 months of entry. Here, there is no showing that the petitioner did not receive timely notice of appeal. Additionally,

petitioner was represented by counsel. Our need for the finality of judgments precludes excusing a 13-month delay.

*Jones*, 693 F.2d at 549.

¶18.    In granting Hartford's motion to vacate the May 13, 2004, judgment, the trial judge found exceptional circumstances because Hartford did not receive written notice of the entry of judgment as required by Miss. R. Civ. P. 77(d), and Hartford was misinformed upon verbal inquiry to the circuit clerk's office. To this end, the trial judge appropriately found excusable neglect. Moreover, by applying Rule 60(b) to this case and ultimately allowing Hartford to present post-trial motions to the court, thus properly preserving the issues raised therein for appeal, the trial judge recognized Hartford's circumstance to be one where the net result of adhering to the letter of the rules of procedure, by way of rigid application, would be to thwart, rather than promote justice. *Jackson Tool & Die*, 426 F.2d at 8 (citing *Byron v. Bleakley Transportation Co.*, 43 F.R.D. 413 (S.D.N.Y., 1967)). We thus find that the circuit court acted well within its discretion when it granted Hartford's motion to vacate and subsequently allowed Hartford's post-trial motions to be filed and considered on their merits. It necessarily follows that this issue, as raised by Williams in her cross-appeal, is without merit.

**II.    WHETHER THE TRIAL COURT ERRED IN DENYING HARTFORD'S MOTION FOR A NEW TRIAL**.

¶19.    Hartford argues that the trial court failed to bifurcate the trial on coverage; that the bad faith claims unfairly prejudiced Hartford; and, that the trial court abused its discretion when

11

it failed to grant Hartford's motion for a new trial. Moreover, Hartford maintains that when the trial court denied its pre-trial motion to bifurcate and separate the contract claim issues from the bad faith issues, it committed reversible error. We agree and find that Hartford, in filing its motion to bifurcate, correctly recognized that in cases involving a claim for punitive damages, evidence regarding such damages must be presented in a separate phase of the trial.

¶20.     Our common law approach to the substantive review of a punitive damages claim is well settled. Moreover, Mississippi law does not favor punitive damages awards, as they are considered an extraordinary remedy and are allowed only within narrow limits. *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988). An award of punitive damages acts to punish the wrongdoer and is to set an example, thereby discouraging others from similar behavior. *Blue Cross & Blue Shield of Mississippi, Inc. v. Maas*, 516 So.2d 495, 497 (Miss. 1987) (citing *Bankers Life and Cas. Co. v. Crenshaw*, 483 So.2d 254, 268 (Miss. 1985); *State Farm Mutual Auto Insurance Co. v. Daughdrill*, 474 So.2d 1048, 1052 (Miss. 1985); *Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239, 247 (Miss. 1977)). As such, punitive damages are allowed only with caution and within narrow limits. *Id*. (citing *Consolidated Life Ins. Co. v. Toche*, 410 So.2d 1303, 1304-05 (Miss. 1982)).

¶21.     A bad faith insurance claim represents one of the most familiar types of punitive damages claims known to our case law. In *Weems v. American Sec. Ins. Co.*, 486 So.2d 1222 (Miss. 1986), this Court expressly clarified the relationship between a bad faith claim and a punitive damages claim when we stated, "we wish to make it clear that the substantive

rule breach of which may subject a party to an assessment of punitive damages is the same in bad faith refusal cases as in any others." ***Weems***, 486 So.2d at 1226 (citations omitted). In ***Weems***, we analyzed a long line of our "bad faith refusal" cases and identified two types of conduct that would subject a defendant to punitive damages. ***Id***. Moreover, we gave substance to the special claim of "bad faith refusal" and determined that punitive damages were appropriate where the defendant acted with malice or where the defendant acted with gross negligence or reckless disregard for the rights of others. ***Id***. Importantly, we recognized our holding in ***State Farm Fire and Casualty Co. v. Simpson***, 477 So.2d 242, 250 (Miss. 1985), and stressed that a bad faith refusal claim is an "independent tort" separable in both law and fact from the contract claim asserted by an insured under the terms of the policy.

¶22.  Recently in ***Wise v. Valley Bank***, 861 So.2d 1029 (Miss. 2003), we examined our punitive damages case law as it has developed since ***Weems*** noting the substantive mandate provided in our punitive damages statute. In a plurality opinion, we reiterated our punitive damages jurisprudence:

> Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2002) will only allow for punitive damages where a plaintiff shows by clear and convincing evidence actual malice, gross negligence evidencing a willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud. "In order for punitive damages to be awarded, the plaintiff must demonstrate a wilful or malicious wrong, or the gross, reckless disregard for the rights of others. Punitive damages are only appropriate in the most egregious cases...." ***Paracelsus Health Care Corp. v. Willard***, 754 So.2d 437, 442 (Miss. 1999) (citations omitted). The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are

13

appropriate. *Id.  See also **Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.**, 759 So.2d 1203, 1215 (Miss. 2000); **Ross-King-Walker, Inc. v. Henson**, 672 So.2d 1188, 1191 (Miss. 1996).

*Wise,* 861 So.2d at 1034-35.

¶23.    While there is more than ample case law concerning the substance of the bad faith refusal claim, and while we have clearly set forth the high threshold of conduct a party must prove a defendant committed before the party can recover punitive damages, we have not examined the notably detailed bifurcated procedure required by statute as set forth by our legislature in Miss. Code Ann. § 11-1-65.  Notably, we have simply not been called upon to address these *procedural* amendments which became effective as of July 1, 1993, and remain unchanged today.

¶24.    The first section of Miss. Code Ann. § 11-1-65 lays out the detailed evidentiary process by which a judge obtains the procedural impetus to make a judgment as a matter of law in regards to punitive damages:

> (1) In any action in which punitive damages are sought:

> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

14

(c) *If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.*

(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65. (Emphasis added).

¶25. In clear terms, our punitive damages statute mandates that all evidence regarding the punitive damages issue be tried in a separate evidentiary hearing before the same trier of fact, if but only if, the jury has awarded some measure of compensatory damages. As such, the clear intent of the legislature was to prevent issue confusion and to create a barrier between testimony regarding the fundamental issue of liability and the inflammatory issue of egregious conduct. Moreover, a jury is, by express legislative design, insulated from both the issue and the evidence regarding punitive damages until after it has heard evidence concerning the basic issue of the culpability of the defendant, and rendered its verdict on the culpability issue. Then, and only if the jury has determined that compensatory damages are appropriate, may the jury hear the evidence concerning the issue of punitive damages. Of course, at the close of the second phase of the trial, the judge, via a motion for a directed verdict, or sua sponte, will make a determination, as a matter of law, and decide whether the issue of punitive damages should be submitted to the jury for consideration.

¶26. In today's case, the trial court erred when it failed to apply this important procedural mandate. By allowing all issues to be tried in a single phase of the trial, the trial court

15

allowed the jury to hear inflammatory evidence regarding alleged abuses committed by Hartford in handling and ultimately denying Williams's UM claim. Moreover, Williams had the benefit of introducing evidence of the manner in which Hartford handled her claim instead of focusing on the simple issue of whether Hartford breached the parties' insurance contract.

¶27. Essential to the disposition of this issue was whether Hartford breached its contract with Williams by denying her claim for uninsured motorist coverage. Because Williams claimed Amos was at fault and Amos was uninsured, Williams argues that Hartford's denial was malicious. However, before she can prove malice, Williams must prove Amos was at fault in the accident - an evidentiary showing which appears well in dispute. To this end, Hartford maintains that based on the facts given by Williams in her initial version of the accident, because it appeared Williams caused the collision, it had an arguable basis to deny coverage.

¶28. At trial, testimony regarding the close issue of fault most likely was confused with testimony concerning the issue of how Hartford investigated fault. Instead of strictly focusing on the accident and the applicability of UM coverage, the jury was allowed to consider evidence as to the way Hartford conducted its investigation of the accident and ultimately ignored the needs of its insured. While the jury did render a large compensatory damage award in this case, there is no way to know how much effect inflammatory punitive damages evidence had on this preliminary determination. Moreover, there is no way to know

16

if the evenly contested issue of fault, if properly tried, would have exonerated Hartford from the liability associated with its decision to deny Williams's UM claim.

¶29. By neglecting the express procedure set forth by our punitive damage statute and the important insular evidentiary mechanism codified therein, the trial court committed reversible error. We must remand this case for a new trial inasmuch as we can never know the full effect the premature hearing of the punitive damages evidence had on the jury's verdict for compensatory damages. Likewise, today, we will neither address nor consider whether the record before us is sufficient to sustain a punitive damages award in this case. The statute requiring a bifurcated trial was not followed. Until the trial is conducted in compliance with Miss. Code Ann. § 11-1-65, we decline to consider the adequacy of proof on this or any other issue on the merits.

¶30. We find that by trying the breach of contract issue along with the bad faith refusal issue, the circuit court not only allowed prejudicial evidence to be heard by the jury, it allowed these two distinct claims to become terminally intertwined. We find this issue raised by Hartford to have merit; therefore, we reverse and remand for a new trial.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING HARTFORD'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.

¶31. Because the procedure employed by the circuit court in trying this case was fundamentally flawed inasmuch as it ignored the procedural mandates outlined by our punitive damages statute, we find this issue need not be addressed.

17

**CONCLUSION**

¶32.    The procedure outlined by Miss. Code Ann. § 11-1-65 is unambiguous and clearly mandates that the base issue of liability be determined by the trier of fact before considering the issue of punitive damages.  Moreover, in promulgating Section 11-1-65, the legislature intended to insulate a jury from evidence meant to disparage the conduct of a defendant until after the jury had determined the defendant was liable.  Finding the circuit court failed to follow this important evidentiary process, we are constrained as a matter of law to reverse and remand for a new trial.

¶33.    As to Hartford's appeal, the final judgment of the Circuit Court of Washington County is reversed, and this case is remanded for further proceedings consistent with this opinion. As to Williams's cross-appeal, we affirm.

¶34.    **ON DIRECT APPEAL: REVERSED AND REMANDED.   ON CROSS-APPEAL: AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**