994 So.2d 775 (2008)
In the Matter of the GUARDIANSHIP OF Austin LANE, a Minor.
William Bush, M.D., Appellant,
v.
Brandy Lane, Natural Parent and Legal Guardian of Austin Lane, a Minor, Appellee.
No. 2006-CA-02016-COA.
Court of Appeals of Mississippi.
February 26, 2008.
Rehearing Denied June 17, 2008.
*776 Stephen P. Kruger, Jackson, attorney for appellant.
Tina Lorraine Nicholson, Gulfport, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. This case arose when Brandy Lane (Lane), who was in a single motor vehicle accident, gave premature birth to her son, Austin, who was born with severe brain injuries. Lane subsequently filed suit on her son's behalf in the Circuit Court of Madison County against several defendants, including her obstetrician, Dr. William Bush, and the OB-GYN Clinic of Jackson (Clinic). The origins of this appeal arose in the Chancery Court of Rankin County, where Lane had been named legal guardian of her minor son. The chancellor initially approved a settlement agreement between Dr. Bush and Lane for $10,500. However, in the related civil action in the Madison County Circuit Court, the Clinic was granted a partial summary judgment and dismissed for the alleged vicarious liability claims of Dr. Bush's conduct. Subsequently, upon Lane's motion, the chancery court amended its decree to specify the vicarious claims against the Clinic for Dr. Bush's actions that had not been released in the original settlement. Lane then filed a motion to set aside the settlement agreement, in its entirety, due to a Mississippi Supreme Court opinion that had recently been handed down, which arguably made the settlement agreement unworkable as a matter of law. On November 2, 2006, the chancellor ordered the settlement agreement between Dr. Bush and Lane set aside and declared void. Dr. Bush now appeals this ruling.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Lane was involved in a single motor vehicle accident in Ridgeland, Mississippi on February 3, 2003. At the time of the accident, she was approximately twenty-nine weeks pregnant with her first child. On the advice of her obstetrician, Dr. Bush, Lane stayed overnight at River Oaks Hospital for observation. After an uneventful evening, Lane was discharged the next day. Dr. Bush saw her in his office at the Clinic that same day, and she appeared fine. On February 6, Lane started bleeding, and she returned to the Clinic. Dr. Bush was not present, so she was examined by Dr. William Sutherland, who pronounced that she was fine. Later that day, Lane gave birth to her son, Austin, who was born with several severe brain injuries, including hydrocephalus, cerebral palsy, and blindness.[1]
¶ 3. Lane requested that the Rankin County Chancery Court appoint a legal guardian for Austin so Lane could initiate a personal injury claim on her son's behalf. The chancery court approved her request. In January 2004, Lane instituted a civil action in the Madison County Circuit Court, on her son's behalf, against Dr. Bush and four other defendantsthe City of Ridgeland, River Oaks Hospital, the Clinic, and Dr. Sutherlandalleging that Austin's injuries were the result of Dr. Bush's and Dr. Sutherland's failures to properly evaluate and treat Lane after the car accident.[2] During discovery, it was *777 found that Dr. Bush's liability insurance would not cover his treatment of Lane during her pregnancy because at the time of the incident he was switching carriers; thus, there was a gap in his coverage. Furthermore, he did not possess sufficient financial resources to pay a substantial judgment, and he would file for bankruptcy if one was entered against him.
¶ 4. Therefore, in August 2005, Lane petitioned the chancellor to grant her authority to settle Austin's claims with Dr. Bush for $10,500, "in full and final settlement of any and all liability of himself" now or in the future. The settlement agreement was conditioned upon its approval by the chancery court, the dismissal with prejudice as to Dr. Bush in the civil action in the Madison County Circuit Court, and execution of a release of indemnity for the liability of Dr. Bush. The agreement also stated that Austin retained the right to prosecute any claims "against the other named defendants including, but not limited to, claims against the other defendants for their vicarious liability" for Dr. Bush's conduct. However, the agreement did not mention the Clinic, specifically, in this regard.
¶ 5. At the hearing regarding this matter, the chancellor made a specific inquiry as to whether substantial liability existed regarding the remaining defendants. Lane's counsel answered affirmatively and represented to the chancery court her understanding that, in addition to the other defendants, the Clinic, which had both assets and insurance, could still be held vicariously liable for Dr. Bush's conduct. Counsel for Dr. Bush did not contradict this understanding. The chancellor approved the agreement by a decree dated August 15, 2005, finding it in the best interest of Austin.[3]
¶ 6. In November 2005, the Madison County Circuit Court granted a partial summary judgment in favor of the Clinic regarding the vicarious liability claims for Dr. Bush's conduct.[4] Dr. Bush claims the circuit court based the Clinic's partial dismissal on the Clinic's argument that the language indemnifying Dr. Bush in the settlement agreement created an improper circle of indemnity between Lane, Dr. Bush, and the Clinic.[5] Dr. Bush claims *778 the circuit court did not base its ruling on a release theory or ambiguity of the agreement. Lane, while acknowledging the circuit court interpreted the agreement as releasing Austin's vicarious liability claim against the Clinic under circular indemnity, also understood the circuit court's ruling to find the settlement agreement ambiguous and not sufficient to preserve Austin's claims against the Clinic for the vicarious liability of Dr. Bush.[6]
¶ 7. In February 2006, Lane filed a motion to amend the August 15, 2005, decree in chancery court, pursuant to Mississippi Rule of Civil Procedure 60(b), to more specifically state that Lane's claims against the Clinic for vicarious liability for Dr. Bush's conduct were preserved.[7] At a hearing on this matter, the chancellor stated that "[t]here is no question in my mind, not a particle, not a scintilla of question as to what the settlement involved that came before this Court. It involved a settlement against Dr. Bush only. It released Dr. Bush individually and only him." Accordingly, the chancellor entered an amended decree regarding the authorization of the settlement between Dr. Bush and Lane, specifically stating that the Clinic was not dismissed from the vicarious liability claims for Dr. Bush's alleged negligence in the August 15, 2005, settlement. The amended decree ordered that the "Petitioner is neither authorized nor empowered to dismiss the Minor's pending claims against the OB-GYN Clinic, PLLC for vicarious liability for Dr. Bush's alleged negligence, nor to enter into any Release or Agreement which purports to or does release those claims." Dr. Bush did not appeal entry of the amended decree.
¶ 8. Lane then filed a motion in the Madison County Circuit Court which requested that Austin's vicarious liability claims be reinstated against the Clinic.[8] However, before the circuit court could rule on her motion, Lane explained that an opinion was handed down by the Mississippi Supreme Court related to vicarious liability, which Lane argued took away any discretion the circuit court may have had to reconsider its interpretation of the August 15, 2005, settlement agreement. Therefore, in August 2006, Lane returned to chancery court and filed a motion to set aside the settlement with Dr. Bush, due to the Mississippi Supreme Court's opinion, J & J Timber Co. v. Broome, 932 So.2d 1 (Miss.2006), which was handed down in *779 May 2006.[9] Lane argued this case overruled established precedence in deciding, as a matter of law, that the release of an employee/tortfeasor operates to bar vicarious liability claims against the tortfeasor's employer. This opinion, Lane stated, warranted voiding the settlement agreement altogether, because it was now unworkable as a matter of law. On November 2, 2006, the chancellor entered an order setting aside Dr. Bush's settlement agreement. At the hearing, the chancellor stated that the settlement negotiated and brought before the chancery court continued to maintain a claim for vicarious liability against other parties as an instrumental part of the contract. The chancellor also found the contractual doctrine of impossibility argued by Lane was well taken and set aside the agreement. The chancellor ordered Lane to return to Dr. Bush the $10,500 settlement paid to Lane's guardianship and voided the settlement agreement. He also ordered Lane to re-institute the suit in the circuit court against Dr. Bush on her son's behalf. Dr. Bush now appeals the chancellor's November 2, 2006, ruling.

STANDARD OF REVIEW
¶ 9. We will not disturb a chancellor's findings of fact on appeal unless those findings are "manifestly wrong, clearly erroneous, or not supported by substantial credible evidence." City of Picayune v. S. Reg'l Corp., 916 So.2d 510, 518(¶ 22) (Miss.2005) (citing Brown v. Miss. Dep't of Human Servs., 806 So.2d 1004, 1005(¶ 4) (Miss.2000)). We review a chancellor's determinations of law de novo. S. Reg'l Corp., 916 So.2d at 519(¶ 23). A chancellor's grant of relief under Rule 60(b) of the Mississippi Rules of Civil Procedure is reviewed for abuse of discretion. Medical Assurance Co. v. Myers, 956 So.2d 213, 216(¶ 11) (Miss.2007).

DISCUSSION OF THE ISSUE

Whether the chancellor erred in voiding Dr. Bush's settlement agreement.
¶ 10. Dr. Bush presents three arguments in support of his contention that the chancellor erred in voiding his settlement agreement. First, he makes a public policy argument that voiding the settlement agreement, in the absence of fraud, duress, or overreaching, erodes the public's confidence in the judicial process, specifically the finality of settlements. He claims that Lane was merely dissatisfied with the ultimate result of the original settlement agreement that she had negotiated with Dr. Bush, which was approved by the chancery court, when she discovered that Lane's potential vicarious liability claim against the Clinic for Dr. Bush's actions was no longer viable. Second, Dr. Bush argues that Rule 60(b) was the proper vehicle for Lane to utilize to move the chancery court to set aside the order, and she did not file such a motion.[10] Further, *780 Dr. Bush contends, even if Lane had filed a Rule 60(b) motion, the case would not have met the requirements for relief under the rule. Third, Dr. Bush states that he did not negotiate the settlement agreement with the intention to preserve the vicarious liability claims against the Clinic. His sole intention was to negotiate a settlement that released him from any future litigation or liability arising from his care of Austin. All duties of both Lane and Dr. Bush under the settlement agreement were fully performed by the time the chancellor amended the decree to reflect the vicarious liability claims against the Clinic had not been released. Therefore, Dr. Bush contends that the chancellor had no authority to rescind a fully performed contract.
¶ 11. It is well established that chancellors are considered "superior guardians" over minors and persons with disabilities. In re Bardwell, 849 So.2d 1240, 1248(¶ 24) (Miss.2003) (citing Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826, 138 So. 593, 595 (1932)); Miss. State Bar Ass'n v. Moyo, 525 So.2d 1289, 1296 (Miss.1988). Austin Lane is both a minor and disabled. The chancery court "must take all necessary steps to conserve and protect the best interest" of the wards of the court before any binding order affecting them is entered. In re Bardwell, 849 So.2d at 1248(¶ 24) (quoting Union Chevrolet Co., 162 Miss. at 826, 138 So. at 595); Moyo, 525 So.2d at 1296. State statute mandates the chancery court authorize the compromise and settlement of a minor's claim before the settlement becomes effective. Miss.Code Ann. § 93-13-59 (Rev.2004). Here, after discovering that the settlement agreement would have an unintended impact on Austin's potential to recover for his injuries, the chancellor decided to void the settlement in the best interest of the child. At oral argument before this Court, we asked counsel for Dr. Bush what in Mississippi law would prohibit the chancellor from utilizing Rule 60(b)(6) to unravel a minor's settlement that had taken on ramifications the court never intended. He responded that while Rule 60(b)(6) was an appropriate vehicle, the circumstances of the case did not justify the chancellor's actions. We review a chancellor's grant of relief under Rule 60(b) for abuse of discretion. We find none in this case.
¶ 12. Throughout the hearings in chancery court on the various motions, evidence was presented that an integral part of the settlement agreement, and the intent of the parties, was that Austin's claims against the Clinic for the vicarious liability of Dr. Bush would not be released or extinguished by the settlement with Dr. Bush. In the August 2005 hearing initially approving the settlement, the chancellor specifically asked Lane if it was anticipated that the other defendants would bear the brunt of liability or payment, and she responded affirmatively. The chancellor asked Lane's attorney if she believed substantial liability existed with regard to the other named defendants, and it was therefore in the best interest of Austin that the claims against Dr. Bush be settled. She responded affirmatively, specifically stating that even though Dr. Bush was being released, the Clinic was still going to have vicarious liability for his conduct; therefore, releasing Dr. Bush would not have a substantial effect on how much Lane might expect to recover from the lawsuit. Counsel for Dr. Bush did not contradict her.
*781 ¶ 13. At the March 8, 2006, hearing regarding the amendment to the original decree, Lane's counsel argued that it was clear from the evidence presented at the original hearing, and the release agreement itself, that it was the intent of the parties not to release the Clinic. Dr. Bush's counsel agreed, but argued that the decree and release were already clear. Lane's counsel also stated that there was no language in either the decree or the release asking that the Clinic be released or dismissed, "and in fact the release specifically preserve[d] the claim against the [C]linic." The chancellor agreed, commenting strongly that he was sure the originally negotiated settlement involved only Dr. Bush.
¶ 14. At the November 2, 2006, hearing to set aside the settlement agreement, the chancery court accepted the argument of impossibility of performance, stating:
I have blessed this settlement, true. I unbless it today. The concept of vicarious liability is analogous to a chain with links. The settlement that was negotiated and brought before this Court continued to maintain a claim for vicarious liability against other parties; that was part of the settlement negotiation contract. The court finds that, in this case, the doctrine of impossibility pled by the attorney for the petitioner, the guardian, is well taken. The settlement previously approved by this court is set aside and held for naught.
¶ 15. While Lane and Dr. Bush disagree about the rationale and details behind the circuit court's partial summary judgment in favor of the Clinic, both parties state that the circuit court's decision was based on the settlement agreement's release of Dr. Bush from future liability, which created an impermissible circle of indemnity; and it was the circuit court's ruling that created the dispute before this Court. If the Clinic had to pay a judgment for Dr. Bush's actions, and it sought indemnity from Dr. Bush, he in turn would be entitled to seek indemnity for these funds from Lane because of the wording of the indemnification clause in the settlement agreement. Thus, Lane would end up impermissibly paying her own judgment. See Toyota Motor Sales, Inc., 320 F.Supp.2d at 498; J & J Timber Co., 932 So.2d at 7-8 (¶¶ 25-26).[11]
¶ 16. We cannot find that the chancellor manifestly erred in finding that it was the express intent of Lane and Dr. Bush to release only Dr. Bush and preserve any claims against the Clinic for vicarious liability for Dr. Bush's conduct. The evidence is sufficient to establish that the parties entered into the settlement agreement under the mistaken assumption that Dr. Bush could be released, and the vicarious liability claims against the Clinic would remain viable. The chancellor approved the settlement agreement on that basis. The chancellor's comments from the bench at the March 8 and November 2 hearings state this intent and understanding. Further, it is evident from the chancellor's questions that he would not have approved the settlement agreement with Dr. Bush for such a nominal amount if the vicarious claims against the Clinic were also extinguished. The chancellor, in his amended decree, purposefully withheld Lane from having the authority to settle or compromise Austin's claim against the Clinic regarding Dr. Bush. When the settlement agreement took on ramifications the parties did not originally envision because of the improper circle of indemnity it created, *782 the chancellor set it aside. We cannot find that the chancellor erred in doing so.
¶ 17. Dr. Bush argues that Rule 60(b) does not support the chancellor's decision to void the settlement agreement. He maintains relief from judgment under Rule 60(b) is extraordinary and will only be granted in exceptional circumstances, as detailed in Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). Dr. Bush further claims that Lane was merely unhappy with the outcome of a tactical decision to accept the settlement offer from Dr. Bush, assuming she could pursue claims for his negligence on a vicarious liability theory against the Clinic. He notes Lane did not move to set aside the settlement pursuant to Rule 60(b); instead she argued the doctrine of impossibility at the hearing on the motion. While neither the chancery court nor Lane referred to Rule 60(b), it is obvious that this is the only procedural device under which the court could have been operating. Had Dr. Bush been uncertain of the procedure being followed, he should have objected on that basis. We will not reverse the chancellor for failure to cite Rule 60(b) when that rule supports his actions.
¶ 18. Rule 60(b)(6) has been described as the "grand reservoir of equitable power to do justice in a particular case." M.A.S. v. Miss. Dep't of Human Servs., 842 So.2d 527, 530(¶ 12) (Miss.2003) (quoting Briney v. U.S. Fid. & Guar. Co., 714 So.2d 962, 966(¶ 12) (Miss.1998)). Relief under this rule "is reserved for exceptional and compelling circumstances" only. Hartford Underwriters Ins. Co. v. Williams, 936 So.2d 888, 893(¶ 14) (Miss. 2006) (quoting Sartain v. White, 588 So.2d 204, 212 (Miss. 1991)). It is our opinion this case would fall under such an "exceptional and compelling circumstance."
¶ 19. Dr. Bush further claims that the "impossibility" of performance was solely of Lane's creating, as the original order did not expressly withhold authority from her to release the Clinic by her own acts. We reject this contention for two reasons. First, the chancery court accepted the impossibility argument, stating that the settlement agreement was negotiated and brought before the court with this concept in mind. Since the chancellor speaks of the "negotiation," we interpret him to be addressing the original settlement agreement and finding that the settlement as originally executed became impossible, not only after the amendment. Second, the amended order contained an express prohibition that Lane could not contract away the vicarious liability claim, and Dr. Bush did not appeal this order.
¶ 20. Lastly, Dr. Bush further contends that our decision in Whitaker v. T & M Foods, Ltd., No.2006-CA-01365-COA, ___ So.2d ___, 2007 WL 2772001 (Miss.Ct. App. Sept.25, 2007) is dispositive of the issue. In that case, a husband and wife injured in an automobile accident accepted the policy limits of the delivery driver's personal insurance policy and agreed not to seek execution against the personal assets of the driver. Id. at (¶¶ 2, 5). They agreed, instead, to seek additional recovery only from the assets of T & M Foods, the company for which the driver was working at the time of the accident. Id. at (¶ 5). The driver and T & M filed a motion for summary judgment in 2004, arguing that the release extinguished all claims against both the driver and T & M. Id. at (¶ 6). The trial court denied the motion with respect to T & M. Id. Two years later, on the day of trial, T & M filed a Rule 60(b) motion for reconsideration based on J & J Timber's changing the law of vicarious liability. Id. at (¶ 7). The trial court granted that motion, relieving T & M of the summary judgment order and *783 ruling that T & M was entitled to judgment as a matter of law. Id.
¶ 21. Thereafter, the plaintiffs filed an amended complaint in which they alleged the release should be set aside because of a mutual mistake in understanding the law in light of J & J Timber. Id. at (¶ 8). The trial court denied the motion, and this Court affirmed. Id. at (¶¶ 8-9). Reviewing the trial court's denial under an abuse of discretion standard, we held that as long as the trial court properly applied Mississippi Rule of Civil Procedure 15(a), this Court would not disturb its decision. Id. at (¶ 10). Our Court found a key factor in granting leave to amend was "prejudice to the opposing party" and considered whether the motion came so late that the right of the adverse party would be prejudicially affected. Id. at (¶ 29). We found that there was no abuse of the court's discretion in denying the motion where the driver and his insurer (who had been out of the litigation since 2004 and 2002, respectively) would be prejudiced and the motion came "at such a late dateessentially the eve of trial," resulting in prejudice to the delivery company. Id. at (¶ 30).
¶ 22. Here, we do not find Whitaker dispositive for a number of reasons. First, while we held that the chancery court did not abuse its discretion in denying the motion, we did not hold that it would have been an abuse of discretion to grant it. "[T]he very concept of discretion presupposes a zone of choice within which the trial court may go either way." Bellsouth Personal Commc'ns, LLC v. Bd. of Supervisors, 912 So.2d 436, 440(¶ 13) (Miss.2005) quoting Carter v. Clegg, 557 So.2d 1187, 1190 (Miss.1990) (citing Kern v. TXO Prod. Corp., 738 F.2d 968, 971 (8th Cir.1984)). Second, while Dr. Bush will be prejudiced by being brought back into the litigation, we cannot say that the chancery court erred in balancing the interests of Dr. Bush against the interests of the disabled minor. Third, as noted by counsel for Lane, this settlement agreement had only been executed one year prior to the motion to set aside the settlement and that entire time had been spent litigating the effect of that agreement on the vicarious liability of the Clinic and attempting to assure that the agreement did not have unintended consequences.
¶ 23. Because of the unique facts of this case, Dr. Bush's public policy argument regarding the finality of settlements is not persuasive. The settlement at bar is part of a larger, ongoing suit with numerous other defendants, including the Clinic, which the parties believed would remain in the litigation to answer for Dr. Bush's conduct. At oral argument, Dr. Bush advised the Court that he did not believe that his dismissal from the circuit court litigation had been certified under Rule 54(b); therefore, it was not even a "final judgment" for purposes of that case. See M.R.C.P. Rule 54(b). While we realize Dr. Bush executed the settlement agreement expecting to be finally released from this litigation, we find equity and fairness necessarily weigh towards the disabled child in this instance. See Union Chevrolet Co., 162 Miss. at 826, 138 So. at 595. The chancellor, as the "superior guardian" of the disabled child, acted appropriately.
¶ 24. Accordingly, we affirm the chancellor's November 2, 2006, order setting aside and voiding Dr. Bush's settlement agreement with Austin Lane. We make no decision as to the effect of this decision on the circuit court action as the Clinic is not a party to this appeal.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*784 KING, C.J., LEE AND MYERS, P.JJ., IRVING, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND GRIFFIS, JJ.
CARLTON, J., dissenting.
¶ 26. Because a party is not entitled to relief from judgment based on ignorance of the law or because he or she is dissatisfied with the effect of the judgment, I find that the chancellor abused his discretion in setting aside the settlement agreement between Lane and Dr. Bush. The result reached by the chancellor and affirmed by the majority opens the door to a lack of finality in judgments on the whim of a party whose litigation strategies do not turn out according to plan. Therefore, I respectfully dissent.
¶ 27. As noted by the majority, the chancellor set aside the settlement agreement in the best interest of the child because the agreement unintendedly resulted in a negative impact on the child's potential for recovery. The majority concludes that the chancellor's decision was proper under Mississippi Rule of Civil Procedure 60(b) because "the evidence is sufficient to establish that the parties entered into the settlement agreement under the mistaken assumption that Dr. Bush could be released, and the vicarious claims against the clinic would remain viable." However, I find the circumstances in the instant case are not so exceptional and compelling as to entitle Lane to the extraordinary relief of having the agreement set aside under Rule 60(b).
¶ 28. In my view, any mistaken assumption that Dr. Bush's release would not bar a separate claim against the Clinic based on vicarious liability was due to ignorance of the law, which is an insufficient basis for relief under Rule 60(b). See Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). At the hearing, Lane argued that the Mississippi Supreme Court's then-recent decision in J & J Timber Co. v. Broome, 932 So.2d 1 (Miss.2006), changed the law by holding that an employee's release bars a subsequent action against his employer on the basis of respondeat superior, absent an allegation of independent negligence on the employer's part. However, the principles set forth in J & J Timber were not new. The court in J & J Timber distinguished between liability of a joint tortfeasor and vicarious employer liability. J & J Timber, 932 So.2d at 3-6 (¶¶ 9-21). In doing so, the court cited prior Mississippi case law squarely holding that a judgment recovered against a servant bars a subsequent or separate recovery from the master. Id. at 5(¶ 17) (citing Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 581, 1 So.2d 216, 218-19 (Miss.1941)); see also Lowery v. Statewide Heathcare Serv. Inc., 585 So.2d 778, 779 (Miss.1991) (holding that a statute of limitations bar against a nurse also barred a claim against the nurse's employer based on respondeat superior).
¶ 29. In the instant case, Lane took a calculated risk in light of prior case law highlighting the risks involved in the respondeat superior arena. Therefore, any suggestion that the settlement agreement between Lane and Dr. Bush was justifiably set aside because its effect was unexpected due to change in the law is unpersuasive. Additionally, in Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 747-48 (5th Cir.1995), the Fifth Circuit Court of Appeals held that "`[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment [under Federal Rule of Civil Procedure 60(b)(6)].'" (quoting Bailey v. Ryan Stevedoring Co., 894 F.2d 157, 160 (5th Cir. 1990)).
*785 ¶ 30. Beyond all this, I find the justification for setting aside the agreement in the instant case further diminished because Lane's potential for recovery, though impaired, is not extinguished. Lane will still be able to pursue a claim for any perceived damages, if any, caused by Dr. Sutherland's negligence, for which the Clinic may be held vicariously liable. Thus, Lane's claim for damages is very much alive and well.
¶ 31. I submit that the settlement agreement in the instant case was essentially set aside simply because one party later became dissatisfied with it; however, this is insufficient for relief under Rule 60(b). See Stringfellow, 451 So.2d at 221 ("[A] party is not entitled to relief merely because he is unhappy with the judgment...."). To allow a litigant to set aside a settlement agreement in the absence of fraud, duress, or overreaching opens the door to a lack of finality in judgments and greatly risks "undermining the public's confidence in the judicial process." Montgomery v. Montgomery, 759 So.2d 1238, 1240-41(¶ 7) (Miss.2000).
¶ 32. In light of the foregoing, I find that the chancellor abused his discretion in setting aside the settlement agreement between Lane and Dr. Bush. Accordingly, I would reverse the judgment of the Chancery Court of Rankin County.
CHANDLER AND GRIFFIS, JJ., JOIN THIS OPINION.
NOTES
[1] The record indicates Austin's medical prognosis is hard to predict. At the age of two years old, he was unable to talk or see, and he could not yet sit up. He may require considerable care for the rest of his life.
[2] According to the record, Dr. Bush's association with the Clinic is in dispute. The Appellant's brief explains that Dr. Bush was not a member or employee of the Clinic at the time of Lane's treatment, having terminated a prior relationship with the Clinic. However, Lane is nonetheless pursuing a vicarious liability claim against the Clinic, on the grounds of apparent authority or agency, for both Dr. Bush's and Dr. Sutherland's actions. Dr. Sutherland is one of the Clinic's employed physicians.
[3] In October 2005, Lane petitioned the chancellor for authority to settle with River Oaks Hospital and the City of Ridgeland. The chancellor approved these settlements as well, but they are not at issue on appeal.
[4] The record contains the circuit court's order authorizing the Clinic's partial summary judgment, but the order does not specify the rationale behind its ruling, nor does the record contain any other relevant pleadings filed in the circuit court.

As noted in the Appellant's brief, the Clinic's motion for partial summary judgment dealt only with the vicarious liability claims against the Clinic for the actions of Dr. Bush. Dr. Bush states the motion did not dismiss the Clinic entirely from the lawsuit, as the Clinic still had vicarious liability claims regarding Dr. Sutherland's conduct.
[5] The "circular indemnity" or "circuity of action" doctrine is "when as a result of indemnification obligations or settlement agreements between the parties, a plaintiff would end up indemnifying another party for its own claim." Toyota Motor Sales, Inc. v. Farr, 320 F.Supp.2d 496, 498 (S.D.Miss.2003) (quoting Refinery Holding Co. v. TRMI Holdings, Inc., 302 F.3d 343, 349-50 (5th Cir.2002)); Crowson v. Bridges, 227 Miss. 73, 75, 85 So.2d 810, 811 (1956). The doctrine would operate in our case as follows: since the Clinic would be entitled to indemnity from Dr. Bush if it was held liable for Dr. Bush's actions, it could recover any money the Clinic paid to the plaintiff from Dr. Bush, who could then, because of the clause in his settlement agreement allowing for "indemnity," recover what he paid the Clinic from the plaintiff. The plaintiff thus would end up paying her own judgment, thereby creating the "circle of indemnity." Therefore, if a settlement agreement does not specifically state that it is preserving a claim against another defendant for vicarious liability for the tortfeasor, the result is that the agreement may extinguish claims against the remaining defendant as a matter of law.
[6] These representations were made in Lane's motion to amend the August 15, 2005, decree and in the transcript of the hearing on November 2, 2006, regarding Lane's motion to set aside the settlement agreement. Dr. Bush, however, argues at length on appeal that the settlement agreement is not ambiguous.
[7] After the grant of a partial summary judgment for the Clinic, Lane asserts, in her motion to amend the August 15, 2005, decree, that the Madison County Circuit Court had stated it would consider reinstating Austin's claims if the chancery court clarified that those claims were preserved.
[8] This document is not included in our record, as it was a pleading in the circuit court proceeding, not the chancery court proceeding.
[9] In W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38, 43 (Miss. 1992), the Mississippi Supreme Court determined that the release of an agent had no effect on his principal's vicarious liability. While Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 151 n. 7 (Miss. 1994) indicated, in dicta, that this holding was suspect, the court did not overrule Runyon. In J & J Timber, Inc., the supreme court adopted the position that an "injured party's release of an employee extinguishes all claims of vicarious liability against the employer, despite any reservation of rights," and overruled Runyon to the extent it held otherwise. J & J Timber, Inc., 932 So.2d at 7-8(¶ 26).
[10] Rule 60(b) states, in pertinent part, that the court, upon a motion, may relieve a party from final judgment for "(1) fraud, misrepresentation, or other misconduct of an adverse party; (2) accident or mistake; (3) newly discovered evidence ... (4) the judgment is void... [or] (6) any other reason justifying relief from the judgment." The rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding...." M.R.C.P. 60(b).
[11] This case, of course, was handed down subsequent to the circuit court's partial summary judgment in favor of the Clinic.